## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC SABATINI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| FGL HOLDINGS, CHINH E. CHU, WILLIAM P. FOLEY, II, CHRISTOPHER O. BLUNT, KEITH W. ABELL, PATRICK S. BAIRD, MENES O. CHEE, RICHARD N. MASSEY, JAMES A. QUELLA, TIMOTHY M. WALSH, FIDELITY NATIONAL FINANCIAL, INC., F I CORP., and F II CORP., | ) CLASS ACTION ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on February 7, 2020 (the "Proposed Transaction"), pursuant to which FGL Holdings ("FGL" or the "Company") will be acquired by Fidelity National Financial, Inc. ("Parent"), a Delaware corporation, F I Corp. ("Merger Sub I"), and F II Corp. ("Merger Sub II," and together with Parent and Merger Sub II, "Fidelity National").

2. On February 7, 2020, FGL's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Fidelity National. Pursuant to the terms of the Merger Agreement, FGL's

stockholders will receive either $12.50 in cash or 0.2558 shares of Parent common stock for each share of FGL common stock they own.

3. On April 1, 2020, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of FGL common stock.

9. Defendant FGL is a Cayman Islands exempted company and a party to the Merger Agreement. FGL's common stock is traded on the New York Stock Exchange under the ticker symbol "FG."

10. Defendant Chinh E. Chu ("Chu") is Co-Chairman of the Board of the Company.

11. Defendant William P. Foley, II ("Foley") is Co-Chairman of the Board of the Company. Foley and BilCar, LLC hold approximately 6.7% of FGL's ordinary shares. Foley is also Chairman of the Fidelity National board.

12. Defendant Christopher O. Blunt is Chief Executive Officer and a director of the Company.

13. Defendant Keith W. Abell is a director of the Company.

14. Defendant Patrick S. Baird is a director of the Company.

15. Defendant Menes O. Chee is a director of the Company.

16. Defendant Richard N. Massey ("Massey") is a director of the Company. Massey also serves as a director of Fidelity National.

17. Defendant James A. Quella is a director of the Company.

18. Defendant Timothy M. Walsh is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Parent is a Delaware corporation and a party to the Merger Agreement. Three of Parent's subsidiaries hold approximately 7.6% of FGL's ordinary shares and all of the issued and outstanding Series B preferred shares of FGL.

21. Defendant Merger Sub I is a Cayman Islands exempted company, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

22. Defendant Merger Sub II is a Cayman Islands exempted company, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of FGL (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24. This action is properly maintainable as a class action.

25. The Class is so numerous that joinder of all members is impracticable. As of February 5, 2020, there were approximately 221,807,598 shares of FGL outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

30. Through its subsidiaries, FGL is a leading provider of annuity and life insurance products.

31. On February 7, 2020, FGL's Board caused the Company to enter into the Merger Agreement with Fidelity National.

32. Pursuant to the terms of the Merger Agreement, FGL's stockholders will receive either $12.50 in cash or 0.2558 shares of Parent common stock for each share of FGL common stock they own.

33. According to the press release announcing the Proposed Transaction:

> FGL Holdings (NYSE: FG) ("F&G" or the "Company"), a leading provider of fixed indexed annuities and life insurance, today announced that the Company has entered into a merger agreement pursuant to which Fidelity National Financial, Inc. (NYSE: FNF) ("FNF"), the leading provider of title insurance and closing and settlement services to the real estate and mortgage industries, will acquire F&G for $12.50 per share, representing an equity value of approximately $2.7 billion.
>
> The transaction was approved by a Special Committee of F&G Directors, a Special Committee of FNF Directors and the FNF Board of Directors. Under the terms of the merger agreement, holders of F&G's ordinary shares (other than FNF and its subsidiaries) may elect to receive either (i) $12.50 per share in cash or (ii) 0.2558 of a share of FNF common stock for each ordinary share of F&G they own. This is subject to an election and proration mechanism such that the aggregate consideration paid to such holders of F&G's ordinary shares will consist of approximately 60% cash and 40% FNF common stock. Upon closing of the transaction, F&G shareholders will own approximately 7% of the outstanding shares of FNF common stock. This represents a premium of 28% to F&G's 60-day volume-weighted average price and a premium of 17% to F&G's all-time high closing stock price following its combination with CF Corp. of $10.70 prior to February 6, 2020, when the media reported a potential transaction. . . .

Timing and Approvals

The transaction is expected to close in the second or third quarter of 2020, subject to the satisfaction of customary closing conditions, including the receipt of regulatory clearances and approval by F&G shareholders.

Following the close of the transaction, F&G will operate as a subsidiary of FNF. F&G is expected to remain headquartered in Des Moines, Iowa, and will continue to be led by Chris Blunt and F&G's current management team. . . .

Advisors

Credit Suisse is serving as financial advisor to F&G, and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel. Houlihan Lokey is serving as financial advisor to the Special Committee of F&G Directors, and Kirkland & Ellis LLP is serving as legal counsel.

## *The Registration Statement Omits Material Information*

34. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

35. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

36. First, the Registration Statement omits material information regarding the Company's financial projections.

37. The Registration Statement fails to disclose: (i) all line items used to calculate Adjusted Operating Income Available to Common Shareholders; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

38. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

39. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Houlihan Lokey ("Houlihan").

40. With respect to Houlihan's Selected Companies Analyses for the Company and Fidelity National, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Houlihan in the analyses.

41. With respect to Houlihan's Selected Transactions Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by Houlihan in the analysis.

42. With respect to Houlihan's Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the projected dividends to ordinary shareholders of FGL for the fiscal years 2020 to 2023; (ii) the terminal values of FGL; (iii) Houlihan's basis for applying ranges of terminal value multiples of 7.5x to 8.5x and 1.25x to 1.45x; (iv) FGL's projected future cash flows and all underlying line items; and (v) the individual inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%.

43. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44. Third, the Registration Statement omits material information regarding the engagements of Houlihan and the Company's additional financial and transaction advisors, Credit

Suisse ("CS") and CC Capital Partners, LLC ("CC").[1]

47. The Registration Statement fails to disclose the amount of Houlihan's compensation that became payable upon the delivery of its opinion.

46. The Registration Statement fails to disclose the amount of compensation Houlihan received for "in the past provid[ing] financial advisory services to FGL and [] in the past provid[ing] and [] currently providing investment banking, financial advisory and/or other financial or consulting services to Blackstone, or one or more security holders or affiliates of, and/or portfolio companies of investment funds affiliated or associated with, Blackstone . . . and CC Capital, or one or more security holders or affiliates of, and/or portfolio companies of investment funds affiliated or associated with, CC Capital."

47. The Registration Statement fails to disclose whether Houlihan has provided past services to Fidelity National or its affiliates, as well as the timing and nature of such services and the amount of compensation received by Houlihan for providing such services.

48. The Registration Statement fails to disclose the amount of compensation CS received for "in the past [] provid[ing] and currently [] providing investment banking and other financial advice and services to FGL and its affiliates."

49. The Registration Statement fails to disclose whether CS has provided past services to Fidelity National, Blackstone,[2] or their affiliates, as well as the timing and nature of such services and the amount of compensation received by CS for providing such services.

---

[1] CC is controlled by Individual Defendant Chu, who serves as Chair of the FGL special committee and Co-Chair of the FGL Board.

[2] Blackstone, through Blackstone Tactical Opportunities, currently owns approximately 17.6% of the outstanding FGL ordinary shares.

50. The Registration Statement fails to disclose the amount of CC's fee that is contingent upon the consummation of the Proposed Transaction.

51. The Registration Statement fails to disclose whether CC has provided past services to the Company, Fidelity National, Blackstone, or their affiliates, as well as the timing and nature of such services and the amount of compensation received by CC for providing such services.

52. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

53. Fourth, the Registration Statement fails to disclose whether the confidentiality agreement executed during the go-shop period contained a standstill and/or "don't ask, don't waive" provision.

54. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Mergers; (ii) Recommendation of the FGL Special Committee and Reasons for the Mergers; (iii) Opinion of the FGL Special Committee's Financial Advisor – Houlihan Lokey; and (iv) Unaudited Prospective Financial Information.

55. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and FGL**

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule

14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. FGL is liable as the issuer of these statements.

58.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

59.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

60.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

61.     The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

62.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Fidelity National

64.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. The Individual Defendants and Fidelity National acted as controlling persons of FGL within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of FGL and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

66. Each of the Individual Defendants and Fidelity National was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

68. Fidelity National also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

69. By virtue of the foregoing, the Individual Defendants and Fidelity National violated Section 20(a) of the 1934 Act.

70. As set forth above, the Individual Defendants and Fidelity National had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: April 9, 2020 | **RIGRODSKY & LONG, P.A.** |
| | By: */s/ Gina M. Serra* |
| | Seth D. Rigrodsky (#3147) |
| | Brian D. Long (#4347) |
| | Gina M. Serra (#5387) |
| **OF COUNSEL:** | 300 Delaware Avenue, Suite 1220 |
| | Wilmington, DE 19801 |
| **RM LAW, P.C.** | Telephone: (302) 295-5310 |
| Richard A. Maniskas | Facsimile: (302) 654-7530 |
| 1055 Westlakes Drive, Suite 300 | Email: sdr@rl-legal.com |
| Berwyn, PA 19312 | Email: bdl@rl-legal.com |
| Telephone: (484) 324-6800 | Email: gms@rl-legal.com |
| Facsimile: (484) 631-1305 | |
| Email: rm@maniskas.com | *Attorneys for Plaintiff* |